IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: CARDINAL HEALTH INC. SECURITIES LITIGATIONS, | : : : | |
| | : | Case No. C2-04-575 |
| Plaintiff, | : : | |
| | : | JUDGE ALGENON L. MARBLEY |
| | : : | |
| THIS DOCUMENT RELATES TO: | : : | Magistrate Judge King |
| All Securities Actions | : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

Plaintiffs, investors in Cardinal Health, Inc. ("Cardinal" or "the Company") bring securities fraud actions against Cardinal, Cardinal executives, Robert D. Walter, George L. Fotiades, Richard J. Miller, James F. Millar, Gary S. Jensen, and Mark Parrish (collectively, the "Individual Defendants"), and Cardinal's independent auditor, accounting firm Ernst & Young ("E&Y").  Plaintiffs allege that from 1998 through 2002, while Cardinal's pharmaceutical distribution unit underwent a reorganization, the corporation engaged in an elaborate accounting scheme designed to artificially inflate its earnings and conceal debt.   Further, Plaintiffs allege that E&Y, hired as the Company's independent auditor in 2002, aided Cardinal in perpetuating its fraudulent accounting.

This matter comes before the Court on E&Y's Motion for Entry of Final Judgment on the only claim asserted against it.  This Court, in an Opinion and Order dated March 27, 2006, granted E&Y's motion to dismiss Plaintiffs' securities fraud claim, asserted under Section 10(b)

of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, which Plaintiffs allege against E&Y in their Consolidated and Amended Complaint. Given this dismissal, and the fact that Plaintiffs assert all remaining claims against other defendants, E&Y asks this Court to enter a final judgment on the aforementioned Section 10(b) claim pursuant to Fed. R. Civ. P. 54(b). For the reasons stated herein, Defendant's 54(b) Motion is **GRANTED**.

## II.  BACKGROUND

### A. Facts

This case involves a securities class action lawsuit brought on behalf of all persons and entities who purchased Cardinal's publicly traded securities between October 24, 2000 and July 26, 2004, inclusive (the "Class Period").[1] The Complaint alleges that all Defendants knowingly or recklessly disregarded errors in Cardinal's methods of revenue recognition, and that, through their public misrepresentations about the Company's Operating Revenue, Defendants fraudulently induced Plaintiffs to purchase Cardinal stock at artificially inflated prices in violation of Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder by the Securities Exchange Commission ("SEC"), including Rule 10b-5, 17 C.F.R. § 240.10b-5. The Complaint further alleges that the Individual Defendants are liable as "controlling persons" of Cardinal, under Section 20(a) of the Exchange

---

[1] Lead Plaintiff, Pension Fund Group ("PFG"), purchased Cardinal common stock during the Class Period, as set forth in its certification previously filed with the Court, and allegedly suffered damages. Though ten different Plaintiffs moved to be appointed Lead Plaintiff in the instant litigation, the Court appointed PFG Lead Plaintiff on January 26, 2005. *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298 (S.D. Ohio Jan. 26, 2005).

Act, 15 U.S.C. § 78t(a).[2] The Complaint asserts causes of action against numerous defendants. The defendants have been grouped together based on their roles and the claims asserted against them. The first such group, which is collectively referred to as "the Cardinal Defendants," includes Cardinal and the six individuals who were either Cardinal directors or members of the Company's senior management during the Class Period: Robert D. Walter, George L. Fotiades, Richard J. Miller, James F. Millar, Gary S. Jensen, and Mark Parrish.

Plaintiffs, however, do not place the blame solely on Cardinal and the Individual Defendants; they also allege that E&Y, serving as Cardinal's independent auditor, assisted the Company "in orchestrating or profiting from [its alleged] fraud." On May 8, 2002, E&Y received $2.31 million from Cardinal for pre-engagement services, and took on Cardinal's multi-million dollar account after Arthur Anderson ("AA"), Cardinal's previous long-term auditor, imploded under the weight of its involvement in massive alleged accounting frauds.[3]

A large portion of E&Y's services related to work that fell outside the scope of financial statements audits. In fact, in addition to auditing, during the Class Period, E&Y provided Cardinal with the following services: (1) due diligence services related to mergers and acquisitions, audit-related research and assistance and employee benefit plan audits; (2) tax

---

[2]At all relevant times, Cardinal's fiscal year ran from July 1 to June 30. Hereinafter, fiscal year will be abbreviated FY (*i.e.*, FY 2001 for fiscal year 2001) and fiscal quarter will be abbreviated Q (*i.e.* 1Q 2002 for first quarter of fiscal year 2002).

[3]Prior to retaining E&Y, Cardinal's auditors were from the now defunct firm of Arthur Andersen ("AA"). AA's "accounting frauds" included, among others, the highly publicized frauds in the WorldCom and Enron cases. *See In re MCI Worldcom, Inc. Sec. Litig.*, 191 F. Supp. 2d 778 (S.D. Miss. 2002); *see In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002). Despite its connection with scandal-plagued AA, Cardinal's account was lucrative. In FY 2000 alone, Cardinal paid AA $11.4 million in auditing and consulting fees, by far the most of any central Ohio's 15 largest publicly-traded companies.

advice and planning services; and (3) other services related to matters such as litigation assistance and internal audit services.[4]

E&Y made no public statement relating to Cardinal until September 30, 2002 when Cardinal filed its 10-K for FY 2002, containing its audited financial statement. E&Y certified Cardinal's FY 2002 financial results, previously audited by AA. The only other public statement E&Y made during the Class Period was its audit opinion with respect to Cardinal's financial statements for FY 2003, which was published in Cardinal's 2003 10-K filed on September 29, 2003.[5] Over the course of the Class Period, E&Y received a total of $27.1 million in fees from Cardinal, which was one of the largest clients of E&Y's Columbus, Ohio office. E&Y's fees were particularly important to the partners in E&Y's Columbus, Ohio office whose incomes and bonuses depended on Cardinal's continued business. Plaintiffs contend that, from the time it became Cardinal's auditor, through the end of the Class Period, E&Y ignored obvious red flags

---

[4]In FY 2002 and FY 2003, $2.6 million of the $4.9 million in total fees E&Y received from Cardinal, and $5.1 million out of the $8.9 million in total fees E&Y received from Cardinal, respectively, related to the firm's performance of various non-audit services.

[5]In its audit opinions for both FY 2002 and FY 2003, E&Y explained the roles of the Company and its auditors, noting that the financial statements were "[t]he responsibility of the Company's management." E&Y averred that it had conducted an audit of Cardinal's year-end financial statements in accordance with GAAS and believed that those financial statements "present[ed] fairly, in all material respects, the consolidated financial position of Cardinal Health, Inc." at the respective audit dates (June 30, 2002 and June 30, 2003). Further, E&Y explained that the Company's fiscal 2000 and 2001 statements were audited by AA, and that E&Y had performed certain limited procedures with respect to those statements "but had not been engaged to audit, review, or apply any [other] procedures to the Company's financial statements" and did not "express an opinion or any other form of assurance" on those financial statements taken as a whole.

4

and blindly certified Cardinal's financial statements knowing that, in reality, Cardinal had intentionally misstated its financials to maintain an artificially inflated stock price.[6]

### B. Procedural History

On April 22, 2005, Lead Plaintiff, PFG, filed a Consolidated Amended Complaint (the "Complaint") alleging that, during the Class Period, Defendants engaged in a scheme to defraud Plaintiffs by knowingly or recklessly disregarding errors in revenue recognition, and, through their public misrepresentations about Cardinal's Operating Revenue, fraudulently induced Plaintiffs to purchase Cardinal's stock at artificially inflated prices.

In summary, Plaintiffs' Complaint alleges the following: (1) Defendants materially misrepresented Cardinal's revenues and earnings in violation of GAAP as evidenced by the Company's press releases and SEC filings concerning revenues and earnings from FY 2000 through FY 2004, and Individual Defendants' statements that routinely highlighted "increased revenues" over consecutive periods; (2) though Cardinal represented that its financial statements were prepared in compliance with GAAP, they were not; and (3) Cardinal's financial statements artificially inflated the net income and earnings of Cardinal and caused Plaintiffs to suffer significant financial losses.

The Plaintiffs' Complaint identifies all of Cardinal Defendants' allegedly false and misleading statements occurring over the course of the Class Period in 105 pages. See Complaint ¶¶ 55-238. The Plaintiffs allege that Cardinal Defendants made these misleading

---

[6]The Court gave a detailed factual history of this case in its 145 page Opinion and Order dated March 27, 2006. It does not feel the need to repeat all the facts for the purposes of this motion. *See, In re Cardinal Health, Inc. Securities Litigation*, 426 F. Supp. 2d 688, 779 (S.D. Ohio 2006) (Marbley, J.).

5

statements in forward-looking statements, press releases, conference calls, and corporate documents, and they aver that analysts relied on these statements in their reports to the market. The Plaintiffs' Complaint is meticulously detailed.

On August 22, 2005, the Individual Defendants, and Defendant Cardinal, jointly brought a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), staying all discovery pursuant to 15 U.S.C. § 78u-4(b)(3)(B). Also on August 22, 2005, Defendant E&Y brought its own Motion to Dismiss the Complaint. Defendants deny the existence of a scheme to defraud and maintain that Cardinal's drop in stock value was primarily due to the Company's transition from a B+H to an FFS model. Further, they assert that Plaintiffs fail to plead scienter and do not connect Defendants' alleged fraud to any true market loss. The Court conducted oral argument on these motions on February 6, 2006.

On March 27, 2006, the Court ruled on Defendant's motions, holding that: (1) Plaintiffs allegations of Defendants' accounting fraud, insider trading, motive, and opportunity were sufficient to state a § 10(b) claim against the Corporation and all of the various Individual Defendants except Defendant Jensen, and Defendants failed to show they were entitled to the protection of the statutory safe harbor for certain allegedly fraudulent forward-looking statements upon which Plaintiffs relied; (2) Plaintiffs stated § 20(a) claims against the Corporation and all of the Individual Defendants except Defendant Jensen; (3) Plaintiffs' failed to state a §10(b) claim against Defendant E&Y because their allegations that E&Y had intimate knowledge of Cardinal's fraudulent activities and that E&Y had failed to adhere to GAAP and GAAS rules did not establish the necessary inference of scienter required under the law.

In granting with E&Y's Motion to Dismiss, the Court found that:

> Plaintiffs rest on nothing more than broad conclusory allegations to assert that E&Y acted with scienter in preparing its audit reports. In *Fidel*, the Sixth Circuit explained that such vague allegations, even when viewed in their totality, "do not create the inference, much less a strong inference, that [an auditor] acted with the required state of mind." *See,* 392 F.3d at 234 (emphasis added). Therefore, as in *Fidel*, in this case, this Court concludes that, in their totality, Plaintiffs' allegations do not raise a strong inference that E&Y acted with scienter in recklessly or knowingly affirming Cardinal's fraudulent accounting for FY 2002 and FY 2003. *City of Monroe*, 399 F.3d at 683.

*In re Cardinal Health, Inc. Securities Litigation*, 426 F. Supp. 2d 688, 779 (S.D. Ohio, 2006) (Marbley, J.).

### III. STANDARD of REVIEW

Fed. R. Civ. P 54(b) states, in relevant part, that "when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." In allowing the trial court to certify a claim against one party for final appeal, Rule 54(b) "tries to strike a balance between the undesirability of piecemeal appeals . . . and the need to make the appellate process available in multi-claim and multi-party litigation to serve the best interests of the parties." *Jalapeno Property Management, LLC v. Dukas*, 265 F.3d 506, 513 (6th Cir. 2001). In reviewing a district court's decision under Rule 54(b), the appellate court should give substantial deference to the decision of the trial court as long as it articulates the reasons for its decision. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 12 (1980); *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003).

Contrary to Plaintiff's assertion, the party seeking Rule 54(b) need not show that "harsh or unusual circumstances" merit such a ruling; instead, "the proper standard against which a district court's exercise of discretion in granting a Rule 54(b) certification is to be judged is the interest of sound judicial administration." *Curtiss-Wright*, 446 U.S. at 9.  Furthermore, the Sixth Circuit, in *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003) *citing Corrosioneering, Inc., v. Thyssen Env. Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986) delineated five factors which the trial court should consider when deciding whether to certify a judgment as final:

> "1) the relationship between the adjudicated and the unadjudicated claims;
>
> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;
>
> (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;
>
> (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;
>
> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."

The court is free to weigh the factors unequally based on a case-by-case basis and need not find that each factor favors certification in order to grant it. *See Curtiss-Wright*, 446 U.S. at 8 n.2.

## IV. LAW and ANALYSIS

### The *Aker's* Factors

#### A.) The Relationship Between the Claim Against E&Y and the Claims Remaining Against the Cardinal Defendants

Plainitffs argue that because their pending claims against the Cardinal Defendants and the dismissed claim against E&Y "stem from the same set of factual allegations," the first *Aker's* criterion militates in favor of denying E&Y's request for a final judgment. Plaintiffs are incorrect. The court is to examine whether the *claims* are related and not simply whether they arose out of the same set of factual circumstances. *See, generally, Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437 (1956). The fact that the dismissed claims rest on some of the same general underlying factual allegations as the surviving claims is not an obstacle to entry of final judge under Rule 54(b). *Id.* While both are 10(b) claims, as this Court noted in its opinion on the Defendants' various motions to dismiss, the 10(b) claims pending against the Cardinal Defendants and the dismissed claim asserted against E&Y are separate and distinct. As the Court thoroughly discussed in its previous opinion, a different legal standard governs 10(b) claims asserted against independent auditors such as E&Y.[7] Not only is the claim against E&Y

---

[7]The meaning of recklessness in securities fraud cases is especially stringent when the claim is brought against an outside auditor. (citations omitted) Recklessness on the part of an independent auditor entails a mental state "so culpable that it 'approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company.'" *Fidel*, 392 F.3d at 227 (citing *PR Diamonds*, 91 Fed. Appx. at 438; *see also, Decker v. Massey Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir. 1982); *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1341 (9th Cir. 1980) (auditor's recklessness "must come closer to being a lesser form of intent (to deceive) than merely a greater degree of ordinary negligence") (internal quotations omitted)). Scienter "requires more than a misapplication of accounting principles"; the plaintiff must prove "that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the

governed by a different legal standard, it is also factually narrower than the remaining 10(b) claims which Plainitiffs assert against the Cardinal Defendants. Unlike the sweeping allegations of fraud they allege against the Cardinal Defendants, Plainitffs allegations against E&Y concern only three years of financial statements. Moreover, Plaintiffs main contention is that E&Y violated Generally Accepted Accounting Principles ("GAAP") and not that E&Y directly participated in the underlying fraud. Thus, the first *Aker's* factor weighs in favor of entering final judgment on the 10(b) claim asserted against E&Y.

### B.) Mootness of Appellate Review

If Plaintiffs choose to appeal the dismissal of the claim against E&Y, future rulings of this Court will not moot the necessity of appellate review of this Court's decision. The Sixth Circuit is required to perform a *de novo* review of this Court's decision to dismiss Plaintiffs' 10(b) claim against E&Y for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 445 (6th Cir. 2000). This same review would be required whether Plaintiffs appeal this ruling immediately or choose to wait until all claims in this case have been adjudicated. Given the differing standard of scienter required against an outside auditor, any future findings of law will not have any impact on Plaintiffs' appeal. Additionally, any future discovery that may occur in this case will not affect Plaintiffs' appeal, as the Sixth Circuit would judge the sufficiency of Plaintiffs' 10(b) claim on the facts alleged in the four corners of the complaint that has been dismissed. Plaintiffs do not address the

---

same facts." *PR Diamonds*, 91 Fed. Appx. at 438 (citing *Worlds of Wonder*, 35 F.3d at 1426 (quoting *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992))." *In re Cardinal Health, Inc. Securities Litigation*, 426 F. Supp. 2d 688, 763 (S.D. Ohio, 2006) (Marbley, J.)

appellate mootness issue in their response brief. For these reasons, the second *Aker's* factor does not weigh against an entry final judgment on the 10(b) claim asserted against E&Y.

### C.) The Likelihood of Duplicative Appellate Review

Plaintiffs argue that the Sixth Circuit is likely to have to consider similar issues twice if this Court grants E&Y's Rule 54(b) Motion. The remaining Defendants have asserted the defenses of comparative fault and good faith reliance on the advice of E&Y. Plainitffs assert that, if they appeal this Court's dismissal of the claim against E&Y forthwith, the Sixth Circuit could issue an opinion which directly impacts the viability of these defenses "without giving the remaining defendants the opportunity to participate in that appeal." Then, if the Cardinal Defendants assert these defenses at trial, the Sixth Circuit is likely to have to review the same issues or conduct again post-trial.

Plaintiffs' argument is without merit. Given the aforementioned different legal issues and standards between the 10(b) claim against E&Y and those asserted against other Defendants, any issue raised on appeal from this Court's dismissal of the claim against E&Y would be distinct from those that might be raised relating to the claims against the Cardinal Defendants. The Sixth Circuit would review this Court's dismissal *de novo* for the sole purpose of determining whether Plaintiffs stated a claim upon which relief could be granted against E&Y; certain Defendants' affirmative defenses should not be at issue in this appeal. Additionally, Cardinal Defendants, who would be most hurt by the possibility of having a decision rendered on its affirmative defenses without their involvement, have not opposed E&Y's Rule 54(b) Motion.

In addition, the interests of judicial efficiency strongly militate in favor of granting E&Y's Motion. If the Sixth Circuit overturns this Court's decision and reinstates that claim

against E&Y, the Court only will have to conduct one trial. If the judgment in favor of E&Y does not become final until the conclusion of all claims against all Defendants, and then the Sixth Circuit overturns this Court's decision, the Court will have to conduct a separate trial with E&Y as the only defendant. A duplicative trial in a case of this magnitude would be a colossal waste of judicial resources. For the above-stated reasons, an analysis of the third *Aker's* factor, the likelihood of duplicative judicial review, favors granting E&Y's Rule 54(b) Motion.

### D.) Set-Off

E& Y has not received an award of damages. Thus, no claim or counterclaim, or absence thereof, could result in a set-off against a final judgment on the 10(b) claim against E&Y. Plaintiffs do not dispute this in their response brief.

### E.) Miscellaneous Considerations

Plaintiffs note that E&Y has failed to allege that it will suffer any immediate hardship if this Court refuses to enter final judgment on the 10(b) claim against E&Y. Plaintiffs argue that this indicates that this case is not an "infrequently harsh" one, and as a result, this Court must deny E&Y's Motion. In making this argument, and in making almost every argument they assert, Plaintiffs rely on dicta in *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58 (6th Cir. 1986).

*Solomon* is inapplicable to this case. The Court in *Solomon* held that certification had to be vacated because the district court judge failed to articulate any reasons for certification. *Id.* at 62. ("In light of the district court's failure to provide reasons for the 54(b) certification, it is impossible for us to see this as 'the infrequent harsh case' in which final certification should be granted. We find that any deference due the district court's Rule 54(b) order is nullified, and we

conclude that due to a lack of finality we are without jurisdiction.") Aside for noting the lack of reasoning behind the district court's certification, in an effort to promote judicial efficiency, the Sixth Circuit undertook an independent examination of the *Aker's* factors, which led it to deny the defendant's motion for final judgment.

The Sixth's Circuit examination of the *Aker's* factors turned on the specif facts in *Solomon*. For example, the court found that the remaining claims and the dismissed claims were substantially similar and that certification would prejudice the remaining defendants. *Id*. This Court, as discussed above, has not made contrary findings. In addition, in contrast to what Plaintiffs allege, the *Solomon* court did not hold that only in an "infrequently harsh case" may a court grant Rule 54(b) certification. Had it done so, it would have been employing an incorrect standard of review. *See Curtiss-Wright*, 446 U.S. at 9. ("The Court of Appeals concluded that the possibility of a setoff required that the status quo be maintained unless petitioner could show harsh or unusual circumstances; it held that such a showing had not been made in the District Court. This holding reflects a misinterpretation of the standard of review for Rule 54(b) certifications and a misperception of the appellate function in such cases.")

Nonetheless, Plaintiffs are correct in their assertion that E&Y will not face substantial hardship if this Court declines to enter a final judgment. Answering discovery requests as a party to this action is only minimally more burdensome than responding to third-party subpoenas.

## V. CONCLUSION

On the whole, an examination of the *Aker's* factors indicates that there is no just reason for delaying certification of this Court's previous decision dismissing all claims against E&Y. For this reason, the Court **GRANTS** E&Y's Motion for Entry of Final Judgment.

**IT IS SO ORDERED.**

                                                                s/Algenon L. Marbley
**ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE**

**DATED: March 29, 2007**