IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

In re CARDINAL HEALTH, INC.  :
SECURITIES LITIGATION,       :
                             :   Case No. 04-CV-575
v.                           :
                             :   JUDGE ALGENON L. MARBLEY
THIS DOCUMENT RELATES TO:    :   Magistrate Judge Norah M. King
                             :
All Securities Actions       :

## OPINION & ORDER

### I. INTRODUCTION

Objectors to a class-action settlement move for attorneys' fees. Cardinal Health, Inc. ("Cardinal") settled a securities class action with its shareholders for $600 million. Lead counsel requested 24% of the settlement. The Court awarded 18%, or $108 million. Now, a number of class members who objected to lead counsel's request demand attorneys' fees between $3.7 and $6.6 million. For the reasons stated below, the Court **DENIES** these motions.

### II. BACKGROUND

Lead Plaintiff, the Pension Fund Group[1] ("PFG"), brought a class action against Cardinal on behalf of all persons and entities who purchased the company's publicly traded securities between October 24, 2000, and July 26, 2004. The complaint alleged that all Defendants, including Cardinal, six members of the company's senior management, and the accounting firm Ernst & Young, knowingly or recklessly disregarded errors in Cardinal's methods of revenue

---

[1] The PFG is composed of four large and sophisticated pension funds: (1) New Mexico State Investment Council ("New Mexico"); (2) Amalgamated Bank as trustee for LongView Collective Investment Fund, LongView 600 Small Cap Collective Fund, LongView VEBA 500, and LongView Quantitative Fund ("Amalgamated"); (3) PACE Industry Union Management Pension Fund ("PACE"); and (4) California Field Ironworkers Trust Funds ("Ironworkers").

recognition. Plaintiffs further alleged that Defendants misrepresented the company's operating revenue so as to fraudulently induce class members to purchase Cardinal stock at artificially inflated prices in violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder by the Securities Exchange Commission ("SEC"), including Rule 10b-5, 17 C.F.R. § 240.10b-5.

Lead counsel adeptly and aggressively litigated these claims, reviewing over 7.2 million pages of discovery, interviewing 98 potential witnesses, consulting numerous experts, and investing over 51,970 billable hours. Lead counsel also defeated a complex motion to dismiss upon which this Court issued a 140-page decision. The results were exceptional. After three years of litigation and protracted negotiations, Cardinal settled the class action for $600 million. On October 19, 2007, the Court held a fairness hearing at which it approved the settlement without objection. Attorneys' fees, on the other hand, proved contentious.

Lead counsel requested 24% of the settlement, or $145 million. The following parties objected: (1) George and Sarah Wagner; (2) Ronald and Vondell Tyler and Susan Browne; (3) the Murphy Family Foundation; (4) William Smith; (5) Pennsylvania Public School Employees' Retirement System; (6) Consulting Fiduciaries, Inc.; (7) New Jersey Division of Investment; (8) New York State Teachers' Retirement System; (9) New York State Common Retirement Fund; and (10) Colorado Public Employees' Retirement Association. On account of the extraordinary settlement, the quality of representation, and the fees awarded in comparable cases, the Court awarded lead counsel 18% of the recovery, or $108 million. Now, two sets of objectors petition the Court for attorneys' fees. Counsel for objector William Smith asks for $6.66 million. Attorneys for objectors Ronald and Vondell Tyler, Susan Browne, and the Murphy Family

foundation (collectively "the Murphy Group") join Smith's petition but only demand $3.7 million.

### III. LAW & ANALYSIS

The Court has the discretion to award objectors reasonable attorneys' fees. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996). An objector to a class-action settlement is not normally entitled to a fee award unless he confers a benefit on the class. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *In re Prudential Ins. Co. of America Sales Practices Litigation*, 273 F.Supp.2d 563, 565 (D.N.J. 2003). Objectors Smith and the Murphy Group contend that they assisted the Court in determining that lead counsel's fee request of 24% was unreasonable. Specifically, they argue that the Court reduced the fee award to 18% on account of their briefing and cross-examination of lead counsel's expert witness at the fairness hearing. As a result, the objectors conclude that they saved the class $37 million in attorneys' fees. For their services, Smith demands 18% of this savings ($6.66 million) while the Murphy Group requests 10% (3.7 million). Both objectors have drastically overestimated their value.

Neither objector conferred any benefit whatsoever on the class or on these proceedings. Smith's only contribution was to apprise the Court of a case, *In re Prudential Insurance Company of America Sales Practices Litigation*, 148 F.3d 283 (3d Cir. 1998), of which this Court was already aware. The Murphy Group was no more informative. It referred the Court to a study by Stuart J. Logan, Jack Moshman, and Beverly C. Moore, Jr., entitled *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 169 (2003). Although this study was marginally useful as a frame of reference for the reasonableness of attorneys' fees in PSLRA cases, other objectors analyzed it in more detail. That is not to say that objectors did not play an

important role in delineating the reasonableness of the fee award. Quite the contrary. The Court relied on the objections from the State of New Jersey, the New York Teachers' Retirement Systems, the State of New York Office of the Comptroller, and the Colorado Public Employees' Retirement Association for their considerable experience in PSLRA class actions. By contrast, the objectors now moving for fees contributed little of value. In fact, the Murphy Group "clouded rather than sharpened the issues" by challenging, without basis, the timeliness and adequacy of the notice. *See, e.g., In re Anchor Sec. Litig.*, No. 88 Cv. 3024, 1991 WL 53651, at *2 (E.D.N.Y. Apr. 8, 1991).

Both the Murphy Group and Smith make outlandish fee requests in return for doing virtually nothing. It is undisputed that some objectors add value to the class-action settlement process by: (1) transforming the fairness hearing into a truly adversarial proceeding; (2) supplying the Court with both precedent and argument to gauge the reasonableness of the settlement and lead counsel's fee request; and (3) preventing collusion between lead plaintiff and defendants. *See, e.g., In re Homestore.com, Inc.*, No. CV01-11115, 2004 WL 2792185, at *1 (C.D. Cal. Aug. 10, 2004) (approving objectors' motion for attorneys' fees because objectors conferred substantial benefit on the class by bringing the inadequacy of the notice to the court's attention); *Frankenstein v. McCroy Corp.*, 475 F.Supp. 762, 767 (S.D.N.Y. 1977).

Yet class actions also attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian

explosion of these opportunistic objectors, which now seem to accompany every major securities litigation. *See Spark v. MBNA Corp.*, 289 F.Supp.2d 510, 513 (D. Del. 2003) (noting that "the cases in which objectors are awarded attorneys' fees are few and far between"). Such is the case here. Accordingly, the Court **DENIES** the objectors' motions for attorneys' fees.

**IT IS SO ORDERED.**

s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: May 5, 2008**